LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of the trial court denying this appellant’s pro se petition for a writ of habeas corpus. Ap-pellee states in its brief that with one exception appellant’s “Statement of the Case” is substantially correct and accurate. Appellant’s Statement of the Case is:
“On January 20, 1970, Arthur Agee plead guilty to grand larceny, was sentenced to a term of one year and a day, and was placed on probation.
“On January 29, 1971, Mr. Agee’s probation was revoked and his sentence was placed into effect.
“On June 14, 1971, Mr. Agee plead guilty to larceny and was sentenced to a seven year term in the state penitentiary, to run concurrently with the prior sentence.
“On July 4, 1971, Mr. Agee was released from Draper Prison and told he would be contacted by the Probation and Parole *159 office. On August 3, 1971, a warrant was issued for Mr. Agee’s arrest.
“On August 27, 1971, Mr. Agee was indicted by an Elmore County Grand Jury for escape.
“On July 7, 1983, Mr. Agee was returned to Alabama from Chicago, Illinois, on a fugitive warrant for escape.
“On August 1, 1983, Mr. Agee was given a disciplinary hearing and found to have violated an institutional regulation for escape.
“On September 29, 1983, Judge Walter Hayden, Circuit Judge of Wetumpka County [which should be Elmore County, with county seat at Wetumpka], nolle prossed the following felony escape charge.
“On October 21, 1983, Mr. Agee filed a petition for writ of habeas corpus, a motion for leave to proceed in forma pau-peris, and an affidavit of indigency in the Tenth Judicial Circuit of Jefferson County, Alabama, Bessemer Division.
“On December 12,1983, Mr. Agee filed a ‘Motion For Leave to File Supplemental Complaint Or Original Complaint’.
“On February 1, 1984, a hearing on Mr. Agee’s ‘Petition for Writ of Habeas Corpus’ was held and his petition was denied.
“On March 19,1984, Mr. Agee gave written notice of appeal, made a motion for appointment of counsel, and filed an affidavit of indigency.
“On March 20, 1984, Mr. Agee’s motions were granted and this attorney [who now appears for him on appeal] was appointed to serve as counsel for Mr. Agee.”
Appellee’s single exception to appellant’s Statement of the Case is thus stated:
“Appellee maintains that Appellant escaped from Draper Prison on July 4, 1971, and that he was not released.”
A major issue presented by appellant is thus stated in his attorney’s brief:
“Whether Substantial Evidence Was Presented at the Disciplinary Hearing Upon Which the Board Could Have Found that Mr. Agee Escaped.”
In support of this issue, appellant relies upon Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and Barker v. State, Ala.Cr.App., 437 So.2d 1375 (1983). Appellee concedes in response that the “record in the instant case does not contain a written statement by the disciplinary board setting forth the ‘evidence relied on and reasons’ for the disciplinary action as required by Wolff v. McDonnell, supra." Appellee states also, “Appellee, in light of the long line of authority against it on this point, surrenders this point and agrees that the findings and reasons of the disciplinary committee are insufficient and the case should be remanded for a more complete disciplinary report.” We understand from this statement, and the context thereof, that appellee does not concede that the evidence furnished at the disciplinary hearing was not sufficient to warrant the disciplinary action taken, but merely that the disciplinary board or committee has failed to set forth in writing evidence relied upon by it that justifies the disciplinary action.
Perhaps compliance with the suggestion made by appellee would eventially lead to a just result. Even so, whatever fault there is to be found in the failure of the evidence on the habeas corpus hearing in the trial court to show that the disciplinary board had complied with its duties as set forth in Wolff v. McDonnell and related cases, the trial court was not in error in its judgment denying the petition for writ of habeas corpus after its hearing thereof, at which the petitioner was given a plenary opportunity to explain his contention and to testify as to the pertinent facts. In this connection, it is to be noted that neither at the time of the disciplinary hearing, nor at the time of the habeas corpus petition, nor at the present time has appellant completed the term of imprisonment of seven years for which he was sentenced in 1971. It is also to be observed that the disciplinary board or committee did not divest him of any good time credit but that the extent of the penalty imposed was loss of “store, phone and visitation privileges for sixty *160 (60) days,” which period had expired prior to the filing of the habeas corpus petition.
Although appellant on the hearing of the habeas corpus petition manifested considerable learning and ability in presenting his cause and in testifying, it is crystal clear that at the time of the incident which he claims constituted a release from imprisonment and which the State contends constituted an escape, he had served less than a few weeks of his sentence to imprisonment for seven years. It follows necessarily that if he was released, instead of escaping, at that time, he was released mistakenly. It follows also that any mistaken release, even by an agent of the prison authorities, does not necessarily constitute a valid release.
The hearing of the habeas corpus petition ended as follows:
“THE COURT: Yes, that is in. I have it as a part of the record.
“Anything else you want to say in regard to this matter Mr. Agee?
“MR. AGEE: Yes, sir, Your Honor. The escape report, back when it was written out, I would like for them tó produce copies of this and everything that was supposed to have happened on the Fourth of July where they say I escaped. I would like to have them submitted, the escape report, or whatever. Because, had I been released, I would have had to have done whatever they told me to do at Draper. I was called up and released. So I had to do what they told me. The told me I had to wait and someone would get in contact with me, and no one got in contact with me.
“THE COURT: Anything further, Mr. Meadows [State’s attorney]?
“MR. MEADOWS: No, sir.
“MR. AGEE: My father can witness to that.
“THE COURT: I don’t think there is any question — I don’t have any problem with the fact that after you left the penitentiary you went to your home in Birmingham and stayed there two months. I don’t find that in dispute.
“MR. AGEE: I stayed there two months and went to Chicago. I came back here and stayed four months after before I went back to Chicago.
“THE COURT: All right. You can step down and have a seat.
“I’m going to show State’s Exhibit 1 in evidence.
“(State’s Exhibit 1 was marked for identification.)
“THE COURT: Mr. Agee and Mr. Meadows, I will take into consideration the evidence presented here today and the documents filed. I will notify both parties of my decision.
“Mr. Agee, you will be hearing from the Court in 7 to 10 days.
“(End of proceedings).”
It may well be that the trial judge gave credence to the sincerity of petitioner’s claim that he was released. However, the undisputed evidence shows that he was never validly and understanding^ released by anyone having authority to release him from imprisonment.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.